UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M. L. A., <br><br> Plaintiff, <br><br> v. <br><br> M. JEFFREY MAISELS, <br><br> Defendant. | Case No. 21-cv-08121-VKD <br><br> **ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Re: Dkt. No. 28 |

Plaintiff M.L.A., a minor, by and through his guardian at litem, asserts a single claim for negligent undertaking against defendant M. Jeffrey Maisels, M.D.[1]  Dkt. No. 27.  The action was removed from state court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a),[2] and Dr. Maisels moved to dismiss plaintiff's first amended complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 1, 10.  The Court granted defendant's motion to dismiss the FAC with leave to amend.  Dkt. No. 25.

Plaintiff amended his complaint for the second time, and defendant again moves to dismiss.  Dkt. Nos. 27, 28.  The Court heard oral argument on the motion on March 22, 2022. Dkt. No. 34.  Having considered the parties' submissions and arguments made at the hearing, the Court concludes that plaintiff's second amended complaint ("SAC") does not adequately address

---

[1] The Court incorporates by reference the statement of background facts in its prior order (Dkt. No. 25 at 1–4) and assumes the parties' familiarity with those facts, which will not be repeated in this order.

[2] The parties have consented to magistrate judge jurisdiction.  Dkt. Nos. 8, 12.  The parties do not otherwise dispute the Court's jurisdiction.

1   the deficiencies identified in the Court's prior order granting defendant's motion to dismiss.  *See*
2   Dkt. No. 25.  Accordingly, the Court grants defendant's motion to dismiss the SAC, without leave
3   to amend.

**I.      AMENDED ALLEGATIONS[3]**

As defendant observes (Dkt. No. 28 at 4), plaintiff's SAC is largely identical to his FAC, with the exception of several paragraphs.  *Compare* Dkt. No. 3 ¶¶ 7, 9, 15, 16 *with* Dkt. No. 27 ¶¶ 7, 10, 16, 17.  The Court briefly describes plaintiff's amended allegations.

First, plaintiff now alleges that "[b]y publishing a standardized, recommended approach to the identification of at-risk newborn infants, and by widely distributing such a guideline to all pediatricians, including M.L.A.'s treating pediatrician Dr. Deyro, through the AAP publications, Dr. Maisels[] assumed the responsibility of both educating pediatricians, including Dr. Deyro, about the need and methodology to reduce the incidence of kernicterus."  Dkt. No. 27 ¶ 7.

Plaintiff further alleges that "[t]hese Guidelines and the treatment charts contained therein for follow-up exams and further bilirubin blood tests, treatment recommendations for phototherapy and exchange blood transfusions were further simplified with an on-line computer program called the 'Bilitool', which can be found at Bilitool.org.  This computer program allows all pediatricians, including Dr. Deyro, to enter the hour-specific bilirubin level of the neonate and then generate a treatment recommendation for follow-up exams and further bilirubin level testing after initial discharge from the hospital after birth."  *Id.*

According to plaintiff, "[t]he Bilitool.org home page specifically identifies that the results generated by the computer program are 'based on the Hour-Specific Nomogram for Risk Stratification' published in 'Management of Hyperbilirubinemia in the Newborn Infant 35 or More Weeks of Gestation' (2004) by the AAP Journal."  *Id.*

Second, plaintiff now alleges that "[n]owhere in the AAP Guideline recommendations does it state that the chart for follow-up of a bilirubin level should not be used after a baby has received phototherapy."  *Id.* ¶ 10.  Specifically, plaintiff alleges that "[t]his omission of such a

---

[3] Unless otherwise noted, the following factual allegations are taken from the SAC and from documents that are incorporated by reference in the SAC or that are the subject of judicial notice.

2

warning misled pediatricians, including those like Dr. Deyro, who used the Bilitool.org and the AAP Guidelines referenced herein to make treatment decisions for follow-up care at the discharge of pediatric patients having undergone phototherapy during the birth hospitalization. Indeed, the omission of a prohibition against using the referenced chart gave incorrect information to pediatricians like Dr. Deyro about the appropriate follow-up for newborn infants, like M.L.A., who received phototherapy during the birth hospitalization prior to discharge." *Id.*

Third, plaintiff now alleges that "Dr. Deyro testified that, although she does not recall the specifics of this specific neonate's discharge, it was her custom and practice to use the Bilitool.org computer program to determine the discharge recommendations for follow-up care. Dr. Deyro was not aware that the age-specific nomogram and, thus, the Bilitool.org program cannot be used for such follow-up care decisions after M.L.A. had received phototherapy." *Id.* ¶ 16. Plaintiff alleges: "If the AAP Guidelines, as drafted by Dr. Maisels as Chairman of the Committee, had correctly stated that a neonate who received phototherapy should be seen for further follow-up within 24 hours of discharge, Dr. Deyro and the hospital nurses would have told M.L.A.'s mother that M.L.A. needed to be seen within 24 hours, and not 48 hours, after discharge." *Id.*

Finally, plaintiff now alleges that "M.L.A. was also diagnosed with G6PD deficiency which is a genetic enzyme deficiency that causes increased hemolysis of red blood cells, which results in elevated bilirubin levels that overwhelms the ability of the neonate to metabolize and excrete bilirubin from the body." *Id.* ¶ 17.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover,

"the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id.* at 678.

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. Documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). A document not attached to a complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Further, courts "need not accept as true allegations contradicting documents that are referenced in the complaint." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–989 (9th Cir. 2001) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Incorporation by Reference

As an initial matter, the Court concludes that the SAC incorporates by reference the 2004 and 2009 AAP Guidelines on hyperbilirubinemia in newborn infants, both of which Dr. Maisels

4

appended to his motion to dismiss. Dkt. No. 28-1, Ex. B, Ex. D. The SAC expressly references and relies on the contents of the 2004 and 2009 Guidelines. *See* Dkt. No. 27 ¶¶ 6–7, 9–10, 12–14. Plaintiff asserts that "[t]he negligent failure of Defendant, M. JEFFREY MAISELS, MD, to clarify [in the Guidelines] that when babies undergo phototherapy during their birth hospitalizations they should return for a follow-up bilirubin within 24 hours after discharge, regardless of what risk zone they are in after phototherapy, led directly to the nurses at Salinas Valley Hospital Medical Center and Dr. Deyro failing to have M.L.A. return to the hospital 24 hours after discharge for a follow-up bilirubin . . . [and this] failure was a substantial factor in allowing M.L.A.'s bilirubin level to go unchecked until he returned to the hospital 3 days after discharge with a bilirubin level that caused bilirubin encephalopathy (kernicterus)." Dkt. No. 27 ¶¶ 23–24. Thus, plaintiff's assertions regarding the contents of the Guidelines, and regarding the responsibility Dr. Maisels assumed "[b]y publishing a standardized, recommended approach to the identification of at-risk newborn infants, and by widely distributing such a guideline to all pediatricians, including Dr. Deyro, through the AAP publications," form the basis for plaintiff's claim for negligent undertaking against Dr. Maisels. *See* Dkt. No. 27 ¶¶ 4–7, 9–14, 23–24.

### B.     Rule 12(b)(6) Motion to Dismiss

Dr. Maisels again moves to dismiss plaintiff's single claim for negligent undertaking for failure to state a claim under Rule 12(b)(6). Dkt. No. 28. To state a claim for negligent undertaking, plaintiff must plausibly allege the following elements:

(1) Dr. Maisels undertook, gratuitously or for consideration, to render services to another;

(2) The services rendered were of a kind Dr. Maisels should have recognized as necessary for the protection of plaintiff;

(3) Dr. Maisels failed to exercise reasonable care in the performance of this undertaking;

(4) The failure to exercise reasonable care resulted in physical harm to plaintiff; and

(5) Either (a) Dr. Maisels's failure to exercise reasonable care increased the risk of such harm, or (b) he undertook to perform a duty owed by another to plaintiff, or (c) the harm was suffered because of reliance by another or by plaintiff upon the undertaking.

*See Artiglio v. Corning, Inc.*, 18 Cal. 4th 604, 612–13 (1998) (quoting Section 324A of the

Restatement (Second) of Torts).

The Court dismissed plaintiff's FAC for three reasons: (1) the complaint did not allege that Dr. Deyro was among the pediatricians sent the AAP guidelines for the treatment of hyperbilirubinemia, *see* Dkt. No. 25 at 7; (2) the complaint failed to adequately allege the nature of the undertaking at issue, *see id.* at 7–8; and (3) the complaint did not allege that Dr. Deyro relied in any way on the AAP Guidelines, *see id.* at 8.

Plaintiff's amended allegations do not cure fully these deficiencies. While the SAC does allege that Dr. Deyro was among the pediatricians to whom the AAP Guidelines were distributed (Dkt. No. 27 ¶ 7), and that Dr. Deyro "used the Bilitool.org and the AAP Guidelines referenced herein to make treatment decisions for follow-up care at[*sic*] the discharge of pediatric patients having undergone phototherapy," (Dkt. No. 27 ¶ 10), the SAC does not plausibly allege an actionable negligent undertaking by Dr. Maisels.

First, plaintiff alleges that "[b]y publishing a standardized, recommended approach to the identification of at-risk newborn infants, and by widely distributing such a guideline to all pediatricians, including Dr. Deyro, through the AAP publications, Dr. Maisels[] assumed the responsibility of both educating pediatricians, including Dr. Deyro, about the need and methodology to reduce the incidence of kernicterus." *Id.* ¶ 7. Plaintiff does not allege that Dr. Maisels supervised or controlled Dr. Deyro's treatment of M.L.A. Given plaintiff's allegation that the Guidelines are educational, it appears the negligent undertaking doctrine may not even apply. *See Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 84 (2019) ("Assuming respondent undertook any specific duty through its rules, policies, and guidelines, such a duty was educational, rather than one of direct supervision and control, as appellant maintains.").

Second, plaintiff contends that Dr. Deyro relied on the Bilitool in deciding how to treat M.L.A. Dkt. No. 27 ¶ 10. However, plaintiff conceded at the hearing on this motion that Dr. Maisels did not create or control the Bilitool, which is offered by an unrelated third party. Dkt. No. 34. Accordingly, to the extent that plaintiff's negligent undertaking claim depends on Dr. Deyro's use of the Bilitool, plaintiff has not alleged an undertaking by Dr. Maisels.

Third, to the extent plaintiff contends that Dr. Deyro relied on the Guidelines themselves in

treating M.L.A., the SAC does not plausibly allege a failure to exercise reasonable care because the material allegations of negligence are contradicted by the very Guidelines on which the plaintiff relies.  Plaintiff alleges that "[n]owhere in the AAP Guideline recommendations does it state that the chart for follow-up of a bilirubin level should not be used after a baby has received phototherapy."  Dkt. No. 27 ¶ 10.  Plaintiff further alleges that "[i]f the AAP Guidelines, as drafted by Dr. Maisels as Chairman of the Committee, had correctly stated that a neonate who received phototherapy should be seen for further follow-up within 24 hours of discharge, Dr. Deyro and the hospital nurses would have told M.L.A.'s mother that M.L.A. needed to be seen within 24 hours, and not 48 hours, after discharge."  *Id.* ¶ 16.  But the Guideline in question contains the very guidance plaintiff claims was negligently omitted.  The 2004 AAP Guideline has an entire appendix on phototherapy, which includes a section on when phototherapy should be stopped.  Dkt. No. 28-1 at 36.  Specifically, this section provides: "If phototherapy is used for infants with hemolytic diseases or is initiated early and discontinued before the infant is 3 to 4 days old, *a follow-up bilirubin measurement within 24 hours after discharge is recommended*."  *Id.* (emphasis added).  Thus, plaintiff's allegation that Dr. Maisels omitted necessary guidance in drafting the AAP Guidelines is simply not an accurate characterization of the Guidelines.  Nor is it plausible, as plaintiff contends, that a pediatrician would look only at one section of the Guideline and not another, or that any such selective consideration of the Guideline reasonably could be attributed to Dr. Maisels.  *Lazy Y Ranch Ltd.*, 546 F.3d at 588 (courts "need not accept as true allegations contradicting documents that are referenced in the complaint"); *see also Alamilla v. Hain Celestial Grp.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (where complaint incorporated by reference two articles contradicting allegation upon which complaint hinged, court did not accept allegation as true and dismissed complaint with prejudice).

**IV. CONCLUSION**

For the foregoing reasons, the Court grants defendant's motion to dismiss.  As it appears, further amendment would be futile, the Court dismisses the action with prejudice.

//

//

**IT IS SO ORDERED.**

Dated: May 11, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge